IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| H.H., ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:25-cv-01360 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| MARGIE QUIN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the "Motion and Memorandum of Law to Dissolve Temporary Restraining Order" (Doc. No. 18, "Motion"), filed by Defendant Margie Quin ("Defendant Quin").[1] Via the Motion, Defendant Quin moves to dissolve the temporary restraining order (Doc. No. 12, "Temporary Restraining Order"), issued by the Court on November 26, 2025, for "lack of subject-matter jurisdiction and because Plaintiffs cannot establish that they are entitled to a TRO." (Doc. No. 18 at 1). Plaintiffs, H.H., ("Plaintiff H.H."),[2] Kelli Hewitt ("Plaintiff Kelli Hewitt"), James Hewitt ("Plaintiff James Hewitt"), and Lacey Perry ("Plaintiff Perry"), have filed a response (Doc. No. 20, "Response") in opposition to the Motion. Defendant Quin has filed a reply (Doc. No. 21, "Reply"), in further support of the Motion.

---

[1] In addition to Defendant Quin, Cole Law Group (hereinafter sometimes "Defendant CLG" or "CLG"), Andrew Goldstein ("Defendant Goldstein"), and Leen Heresh ("Defendant Heresh") are also Defendants in this action.

[2] Although Plaintiff H.H. has now turned eighteen such that the Court could refer to him by his full name, Hudson Hewitt, for the sake of consistency and coherence with its previous rulings in this case, the Court will continue to refer to him as Plaintiff H.H. herein.

For the reasons described herein, the Court will **grant** the Motion (Doc. No. 18) in an accompanying order.[3] Moreover, in line with the analysis herein, the Court will **dismiss** Counts I, II, III, and IV of the complaint (Doc. No. 1) without prejudice and will **dismiss** this action in the accompanying order. Additionally, because the Temporary Restraining Order will be dissolved and this action will be dismissed in its entirety, Plaintiffs' pending "Motion to Convert Temporary Restraining Order Into Preliminary Injunction" (Doc. No. 22) will also be **denied** as moot.[4]

## BACKGROUND[5]

The reader's familiarity of this case is presumed. The Court will provide only a brief overview of the claims underlying this case, which are further detailed in the Court's memorandum opinion issued on November 26, 2025 (Doc. No. 11 at 3-11, "Memorandum Opinion"), before providing a brief overview of the procedural background underlying the Motion and this action as well as the parties' arguments on the Motion.

1. Factual Background

Via the complaint (Doc. No. 1, "Complaint"), Plaintiffs bring four claims.

Count I is a claim under 42 U.S.C. § 1983 ("§ 1983 claim") brought by Plaintiff Kelli Hewitt, Plaintiff James Hewitt, and Plaintiff Perry (collectively, "Count I Plaintiffs") against Defendant Quin for violation of the due process rights of the Count I Plaintiffs under the Fourteenth

---

[3] Owing to the expedited nature of this matter, the Court's write-up of its analysis herein may be briefer than it otherwise might be.

[4] If a party wishes to convert a temporary restraining order into a preliminary injunction without experiencing a temporal gap between the two, it would be very well advised to move for such relief prior to the evening before the expiration of the temporary restraining order.

[5] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. In addition, where the Complaint is cited herein without including a paragraph symbol, the citation is not to a paragraph number but rather to a page that contains the cited content outside the boundaries of any paragraph

Amendment to the U.S. Constitution. Via Count I, Plaintiffs allege that the Count I Plaintiffs "have a constitutional right to decisions about the care, custody, and control of Plaintiff H.H[.], as well as [the] minor children R.J., W.H., R.M., and B.M.," (Doc. No. 1 at ¶ 82), and that Defendant Quin, "acting under color of law, seeks to remove [Plaintiff] H.H., R.J., W.H., R.M., and B.M. from the Hewitt-Perry family due to [Plaintiff] H.H.'s refusal to sign a false immigration application." (*Id.* at ¶ 86). Thus, Plaintiffs allege that Defendant Quin's conduct violated the Count I Plaintiffs' "due process rights to family unity." (*Id.* at ¶ 89).

Count II is also a § 1983 claim against Defendant Quin for violation of due process rights under the Fourteenth Amendment. Unlike Count I, though, Count II is brought by Plaintiff H.H. (and only Plaintiff H.H.). Via Count II, Plaintiffs allege that "Plaintiff H.H. has a constitutional right to fundamental fairness in proceedings related to his living placement and immigration status," and that "[t]his right protects him from being coerced to sign any documents that affect his immigration status or being removed from his family's care due to his refusal to sign any documents that affect his immigration status." (*Id.* at ¶ 94).

Plaintiffs also bring two state-law tort claims. One (Count III) is a claim for false imprisonment against Defendant CLG, Defendant Goldstein, and Defendant Heresh. The other (Count IV) is a claim for intentional infliction of emotional distress against Defendant CLG, Defendant Goldstein, and Defendant Heresh.

Via the Complaint, Plaintiffs request several types of relief.

First, Plaintiffs request,[6] presumably in connection with Count I and Count II, a TRO:

> . . . enjoining Defendant Margie Quin, and her employees and agents, from: (1) forcing, coercing, or pressuring Plaintiff H.H. into signing any immigration documents without the presence of his chosen legal counsel; (2) threatening Plaintiff H.H. with deportation or any other adverse immigration consequences as a means to coerce his signature on immigration documents; (3) preventing Plaintiff

---

[6] As noted below, this request was granted in the form of the Temporary Restraining Order.

H.H. from accessing legal counsel of his choice; (4) physically restraining H.H. or preventing him from leaving any meeting or location; (5) removing or threatening to remove Plaintiff H.H. from his current kinship placement with his sister Lacey Perry, or removing or threatening to remove his minor siblings, R.J., W.H., R.M., and B.M., from that same placement, where such removal is based on (i) his refusal to sign immigration documents without legal counsel, (ii) his exercise of his constitutional right to counsel, (iii) his pursuit of this legal action; (6) using coercive tactics, threats, raised voices, and intimidation directed at Plaintiff H.H. regarding his immigration status or any legal documents; (7) requiring Defendant and her employees and agents to permit Plaintiff H.H.'s attorney of choice to be present at all meetings, proceedings, or discussions concerning Plaintiff H.H.'s immigration status, legal status, or any documents requiring his signature; (8) requiring Defendant and her employees and agents to provide Plaintiff H.H. with reasonable time—not less than 48 hours—to review any legal documents with counsel of his choice before requesting his signature, unless a court of competent jurisdiction has set a shorter deadline.

(Doc. No. 1 at 20-21).

Plaintiffs additionally seek, presumably also in connection with Counts I and II "[a] declaratory judgment determining that Defendant [ ] Quin violated the Plaintiffs' constitutional rights." (*Id.*). Via the Complaint, and in connection with Counts III and IV, Plaintiffs further seek "[a]n award of compensatory damages" and an award of "punitive damages" against Defendant CLG, Defendant Goldstein, and Defendant Heresh. (*Id.* at 21). Additionally, Plaintiffs seek "[r]easonable attorney's fees, expert fees, and all costs of litigation incurred by Plaintiffs pursuant to 42 U.S.C. § 1988," and "[a]n award of pre-judgment and post-judgment interest." (*Id.*).

2. Procedural Background

On November 21, 2025, Plaintiffs filed a "Motion for Temporary Restraining Order." (Doc. No. 3, "TRO Motion"). On November 26, 2025—prior to any response from Defendants in this action—the Court granted the TRO Motion for the reasons set forth in the Memorandum Opinion (Doc. No. 11) and accordingly granted the Temporary Restraining Order (Doc. No. 12), which provided in relevant part:

IT IS HEREBY ORDERED that Defendant Margie Quinn, as Commissioner of the Tennessee Department of Children's Services, her officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are immediately RESTRAINED AND ENJOINED as follows:

1. Defendant is restrained from forcing, coercing, or pressuring H.H. to sign any immigration documents without the presence of his chosen legal counsel, including but not limited to: (a) forcing H.H. to sign documents without adequate time for review; (b) presenting documents for signature without full explanation of their contents and consequences; (c) refusing to provide copies of documents for review with counsel; and (d) setting arbitrary deadlines for signature without legal justification;

2. Defendant is hereby restrained from threatening H.H. with deportation or any other adverse immigration consequences as a means to coerce his signature on immigration documents, including but not limited to making statements that he has "no other options" or "no immigration status" when such statements are false or misleading;

3. Defendant is hereby restrained from preventing H.H. from accessing legal counsel of his choice, including but not limited to: (a) excluding attorneys from meetings concerning H.H.'s immigration status; (b) calling law enforcement to remove H.H.'s chosen counsel from meetings; (c) claiming that attorneys are "trespassing" when they appear at H.H.'s request; or (d) misrepresenting to third parties the nature of an attorney's representation of H.H.;

4. Defendant is hereby restrained from physically restraining H.H. or preventing him from leaving any meeting or location, including but not limited to: (a) holding doors shut to prevent his exit; (b) telling him he cannot leave when he requests to do so; (c) using physical force or the threat of physical force to detain him; or (d) instructing others to prevent his departure;

5. Defendant is hereby required to permit H.H.'s attorney of choice to be present at all meetings, proceedings, or discussions concerning H.H.'s immigration status, legal status, or any documents requiring his signature;
6. Defendant is hereby required to provide H.H. with reasonable time—not less than 48 hours—to review any legal documents with counsel of his choice before requesting his signature, unless a court of competent jurisdiction has set a shorter deadline;

7. Defendant is hereby restrained from removing or threatening to remove H.H. from his current kinship placement with his sister Lacey, or removing or threatening to remove his minor siblings R.J. (16), W.H. (15), R.M. (13), and B.M. (12), from that same placement, where such removal is based on:

(a) his refusal to sign immigration documents without legal counsel; (b) his exercise of his constitutional right to counsel; or (c) his pursuit of this legal action; Defendant shall not threaten such removal or separation as a means to coerce H.H.'s compliance with their demands regarding immigration paperwork; and

8. Defendant is hereby required to cease immediately all coercive tactics, threats, raised voices, and intimidation directed at H.H. regarding his immigration status or any legal documents.

This Order shall remain in effect for fourteen (14) days from the date of entry, unless extended by the Court for good cause shown or by consent of the parties. Pursuant to its wide discretion to do so, the Court waives the security bond requirement under Federal Rule of Civil Procedure 65(c).

(Doc. No. 12 at 1-4).

On December 2, 2025, Defendant Quin filed her Motion (Doc. No. 18), and on December 5, 2025, Plaintiffs filed their Response (Doc. No. 20). On December 8, 2025, Defendant Quin filed her Reply. (Doc. No. 21).

3. The Parties' Arguments

In her Motion, Defendant Quin makes several arguments for why the Temporary Restraining Order should be dissolved. Defendant Quin first argues that the Temporary Restraining Order should be dissolved because "[t]his Court lacks subject-matter jurisdiction over this case, and therefore lacks subject-matter jurisdiction to issue or sustain the TRO, because the case has become moot," as a result of Plaintiff H.H. turning eighteen years of age and "no longer" being subject to the Department of Children's Services' ("DCS") "legal care, custody, or control." (Doc. No. 18 at 7-8). Second, Defendant Quin argues that the Court "lacks subject-matter jurisdiction because [Defendant] Quin is entitled to Eleventh Amendment immunity from this lawsuit." (*Id.* at 9).[7] Third, Defendant Quin argues that the Court lacks subject-matter jurisdiction over this matter

---

[7] There is some confusion within this Circuit as to whether this state sovereign immunity sounds in personal or subject-matter jurisdiction. *Compare Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)

under the domestic-relations exception to federal jurisdiction. (*Id.* at 11-13). Finally, Defendant

Quin argues that the "Court should decline to exercise its jurisdiction under the *Younger* abstention

doctrine," because of pending dependency proceedings in Tennessee state court regarding the four

minor children, R.J., W.H., R.M., and B.M. (*Id.* at 13-14).[9]

Plaintiffs, unsurprisingly, take issue with all of these arguments. Plaintiffs first argue that

the Temporary Restraining Order in this case is not moot because the Temporary Restraining Order

---

("The sovereign immunity guaranteed by [the Eleventh] Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity") *with Ku v. State of Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (determining that "the immunity defense in cases otherwise falling within a federal court's original jurisdiction should be treated like the defense of lack of personal jurisdiction"). The Court here follows the lengthy line of cases in the Sixth Circuit holding that a sovereign immunity defense should be treated like a personal jurisdiction defense. *See e.g., Ku*, 322 F.3d at 432, 434 (noting that "it appears that the Supreme Court is moving in the direction of concluding that, in cases where the district court otherwise has original jurisdiction over the matter, the Eleventh Amendment immunity defense should be treated in the same way courts have traditionally treated personal jurisdiction rather than as a matter of subject matter jurisdiction" and that "the Supreme Court has unequivocally rejected the view that, in cases over which the federal court otherwise has original jurisdiction, the additional 'jurisdictional bar' erected by the Eleventh Amendment should be treated as a matter of 'subject matter'"); *Ruff v. Corr. Med. Servs.*, No. 07-15443-BC, 2009 WL 1384158, at *1 (E.D. Mich. May 13, 2009) ("In the Sixth Circuit, sovereign immunity is treated like the defense of lack of personal jurisdiction."); *Doe v. U.S. Dep't of Veteran Affs.*, No. 08-14958-BC, 2009 WL 2023663, at *2 (E.D. Mich. July 7, 2009) (granting a motion to dismiss based on the grounds of sovereign immunity under Rule 12(b)(2)); *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173, 1187 (S.D. Ohio 2020) (quoting *Ku*, 322 F.3d at 432). *See also Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 282 (2023) (Gorsuch, J., concurring in part) ("Generally, questions about sovereign immunity do not go to a court's subject-matter jurisdiction (something a court must consider in every case even if the parties do not). Instead, questions of sovereign immunity usually go to a court's personal jurisdiction over a particular defendant. And as with other personal-jurisdiction defenses, a sovereign may waive its immunity and consent to judicial proceedings if it wishes.").

    Thus, although Defendant Quin characterizes her sovereign immunity argument as an attack on this Court's subject-matter jurisdiction, the Court construes Defendants' argument as an attack on personal jurisdiction.

[8] Defendant Quin also argues that Plaintiffs have not made out the requirements for a TRO to issue. Because the Court ultimately decides the Motion (and dispenses with the underlying action) on jurisdictional grounds, the Court does not reach this argument.

[9] Proof of the ongoing state juvenile proceedings was attached to Defendant Quin's Motion at Docket No. 18-1, which is comprised of an *Ex Parte* Custody Order" regarding Plaintiff H.H., and the four minor children, R.J., W.H., R.M., and B.M.

aims at "restraining DCS from removing H.H.'s other four minor siblings[, R.J., W.H., R.M., and B.M.,] in retaliation for [Plaintiff H.H.'s] exercise of constitutional rights." (Doc. No. 20 at 9). Plaintiffs further argue that because "[Defendant Quin's] threatened removal of the four minor siblings, [R.J., W.H., R.M., and B.M.]—which escalated after Plaintiffs sued her—is scheduled for December 8, 2025, the controversy over Plaintiffs' constitutional claims remains an "[a]ctive, [o]ngoing [c]ontroversy." (*Id.* at 11).[10] Plaintiffs also argue that "Plaintiffs' declaratory judgment claim [embodied in the relief requested in Count I and Count II] is not moot because the threat of removal is ongoing" and that because Plaintiffs seek "purely prospective relief," Defendant Quin is not entitled to sovereign immunity. (*Id.* at 13-15). Plaintiffs also argue that the domestic-relations exception to federal subject-matter jurisdiction does not apply because this action is a civil rights action challenging allegedly unconstitutional conduct and not an action seeking "custody, visitation, or modification of the juvenile court's custody order." (*Id.* at 15). Finally, Plaintiffs argue that *Younger* abstention does not apply because Plaintiff H.H. would be unable to adequately protect his constitutional rights in a state juvenile proceeding to which he is no longer subject because he recently turned eighteen. (Doc. No. 20 at 19-20).[11]

---

[10] The Court addresses the impact (or lack thereof) on the Court's mootness analysis of the fact that December 8, 2025—the date of the scheduled removal of the four minor children—passed prior to the entry of this memorandum opinion and the accompanying order, in two footnotes below.

[11] Plaintiffs also make two other arguments with respect to Defendant Quin's Motion that the Court will address below.

First, Plaintiffs argue that there is "no Rule of Civil Procedure on motions to dissolve TROs that are not *ex parte*, where the adverse party was given notice of the TRO motion and had a full and fair opportunity to respond. . . . [as] was the case here." (Doc. No. 20 at 6-7). Plaintiffs also argue that even if the Court treated the Temporary Restraining Order as *ex parte*, Defendant Quin's Motion fails "because she did not provide Plaintiffs the two days' notice" that Fed. R. Civ. P. 65(b)(4) requires of a party moving to dissolve or modify a TRO. (Doc. No. 20 at 1). These are odd arguments for Plaintiffs to make because there is also no Federal Rule of Civil Procedure explicitly permitting the Court to enter a TRO that is not *ex parte*, as the Court noted in its Memorandum Opinion. (Doc. No. 11 at 2 n.3). The Court nevertheless entered Plaintiffs' proposed TRO even though Defendants had been provided notice of the TRO Motion (thereby rendering it not an *ex parte* TRO) because (1) "parties and courts have been known to speak as if a motion

can be one for a TRO within the scope of Rule 65 (and not a preliminary injunction, which is governed by other provisions of Rule 65) even if it is made with notice to the opposing party," and (2) the Court issued its decision on the TRO Motion "before Defendants [had] responded to the Motion and before the Defendants would necessarily have had a full opportunity to respond to the Motion." (*Id.*).

   In any event, the Court will not deny Defendant Quin's Motion based on any purported procedural deficiencies, for two reasons: (1) even to the extent Defendant Quin violated Fed. R. Civ. P. 65(b)(4), courts regularly "overlook non-compliance with procedural rules and consider [motions] on the merits, especially since it is generally preferable to avoid hyper-technical approaches to litigation," *Trial Laws. Coll. v. Gerry Spence's Trial Laws. Coll.*, No. 120-CV-00080-JMC-MLC, 2021 WL 7287674, at *2 (D. Wyo. June 11, 2021); and (2) the arguments that Defendant Quin raises here with respect to mootness and *Younger* abstention are exactly the kinds of issues that the Court is obliged to consider *sua sponte* once it perceives them and without necessarily waiting for a party to raise them. *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir.), cert. denied, 145 S. Ct. 376 (2024) ("[W]e may raise the question of mootness *sua sponte*" to "assure ourselves of our own jurisdiction to hear a case,"); *Hill v. Snyder*, 878 F.3d 193, 206 n.3 (6th Cir. 2017) (acknowledging that "federal courts may raise abstention *sua sponte*"); *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (discussing how the U.S. Supreme Court had raised the issue of *Younger* abstention *sua sponte* in *Sosna v. Iowa*, 419 U.S. 393, 396–97 n. 3 (1975), and *Ohio Bureau of El. Servs. v. Hodory*, 431 U.S. 471, 479–80 (1977)). In stating the first of these two reasons, the Court does not mean to imply that the notice requirement in Fed. R. Civ. P. 65(b)(4) is, on its face, merely a technical requirement; rather the Court observes that in *this* context, where Plaintiffs have had notice of, and time to respond to, Defendant Quin's Motion, any non-compliance with Fed. R. Civ. P. 65(b)(4)'s notice requirement looks more technical than substantive and thus does not warrant ignoring the merits of Defendant Quin's Motion.

   Plaintiffs also argue that Defendant Quin's Motion cannot "satisfy the high bar" to dissolve an injunction. (Doc. No. 20 at 7). At base, Plaintiffs argue that because "there have been no 'significant changes in the law or circumstances' that 'threaten to convert a previously proper injunction into an instrument of wrong,'" Defendant Quin has not met her burden to dissolve or alter the Temporary Restraining Order.  (Doc. No. 20 at 8) (quoting *Gooch v. Life Invs. Ins. Co. of Am.* 672 F.3d 402, 414 (6th Cir. 2012)). This argument can be dispensed with for three reasons. First, this argument ignores the actual standard on a motion to dissolve a TRO, which provides that "on a motion to dissolve a TRO, the party that obtained the TRO 'bears the burden of justifying the need for continued injunctive relief on a temporary basis.'" *Dolan v. Portaro*, No. 1:15-CV-01022, 2015 WL 3444351, at *1 (N.D. Ohio May 28, 2015) (quoting *North Dakota v. U.S. Army Corps of Eng'rs*, 264 F. Supp. 2d 871, 879 (D.N.D.2003)). *See also Lapa v. JP Morgan Chase Bank*, N.A., No. 21-CV-04737 (NSR), 2022 WL 3290677, at *2 (S.D.N.Y. Aug. 11, 2022) ("On a motion to dissolve a temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief"). Second, this argument ignores the thrust of the issue before the Court: whether the Court has or had jurisdiction to issue the Temporary Restraining Order or to hear the case at all. It matters not whether there has been a change in law or circumstances if the Court lacked (or now lacks) the jurisdiction (or if the Court should have declined to exercise jurisdiction) to issue the Temporary Restraining Order or otherwise hear this action. Third, there actually have been two changes in circumstances since the Temporary Restraining Order was issued. First, the Court now has had the benefit of hearing from Defendant Quin, which was not possible at the time the Temporary Restraining Order was issued, given the time constraints under which the Court was operating at the time. Second, Plaintiff H.H. has since turned eighteen, while the Temporary Restraining Order was based in large part of the premise that he had not yet done so (as it turned out, by the time the Temporary Restraining Order was issued, Plaintiff H.H. actually had hit his eighteenth birthday; it was issued precisely on Plaintiff H.H.'s eighteenth birthday, a matter of precise timing that the Court unfortunately did not grasp at the time).

   Accordingly, these two arguments by Plaintiffs are unavailing and the Court will consider the merits of Defendant Quin's Motion.

Below, the Court will first address Defendant Quin's mootness arguments, before then addressing her arguments on *Younger* abstention. Because the Court ultimately concludes that the federal claims, Count I and Count II, in this action are dismissed based on *Younger* abstention and mootness, respectively, the Court declines to address Defendant Quin's arguments with respect to the domestic-relations exception to subject-matter jurisdiction or with respect to 11th amendment sovereign immunity.[12]

DISCUSSION

1. <u>Mootness</u>

Defendant Quin argues that "[t]his Court lacks subject-matter jurisdiction over this case, and therefore lacks subject-matter jurisdiction to issue or sustain the [Temporary Restraining Order], because the case has become moot" as a result of Plaintiff H.H. turning eighteen years of age and "no longer" being subject to DCS's "legal care, custody, or control." (Doc. No. 18 at 7-8). Plaintiffs, by contrast, argue that the Temporary Restraining Order in this case is not moot, because it aims at "restraining DCS from removing [Plaintiff] H.H.'s other four minor siblings in retaliation for [Plaintiff H.H.'s] exercise of constitutional rights," (Doc. No. 20 at 9), and that because "[Defendant Quin's] threatened removal of the four minor siblings—which escalated after Plaintiffs sued her—is scheduled for December 8, 2025," the controversy over Plaintiffs' constitutional claims remains an active, ongoing controversy. (*Id.* at 11). Plaintiffs further argue that "Plaintiffs' declaratory judgment claim [embodied in the relief requested in Count I and Count II] is not moot because the threat of removal is ongoing." (*Id.* at 13).

---

[12] The Supreme Court has recognized that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*, 549 U.S. 422, 431 (2007) (recognizing that when dismissing a case, a court may rely on *Younger* abstention or personal jurisdiction prior to relying on subject-matter jurisdiction). Accordingly, in the interests of judicial efficiency, the Court herein will consider Defendant Quin's mootness arguments and then her arguments on *Younger* abstention because they ultimately resolve the Motion (and indeed, the underlying action).

Implicated by these arguments are really two distinct issues that the Court must address. The first is whether it lacked (or now lacks) jurisdiction to issue some or all of the Temporary Restraining Order due to the underlying case or controversy being or becoming moot. And the second is whether some or all of Plaintiffs' claims are now moot—and thus subject to dismissal—due to Plaintiff H.H. turning eighteen

Below, the Court will first provide the legal framework concerning mootness and then address each of the above issues in turn.

    *i.*    *Mootness Generally*

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Gren*, 159 U.S. 651, 653 (1895)). In other words, "[i]f a controversy is moot, the court lacks subject matter jurisdiction over the action." *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 851 (W.D. Ky. 2007) (*citing Church of Scientology of Cal.,* 506 U.S. at 12).

"The mootness inquiry must be made at every stage of a case." *McPherson v. Mich. High. Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997). The Sixth Circuit has held that "as a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019). "'The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties . . ..'" *McPherson*, 119 F.3d at 458 (quoting *Crane by Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)). Stated differently, where

a party "can gain no meaningful relief from the continuation of that injunction," the Court is obligated to vacate the injunction as moot. *Smith v. S.E.C.*, 129 F.3d 356, 363 (6th Cir. 1997).

ii. *Is the Temporary Restraining Order Moot?*

Here, those portions of the Temporary Restraining Order concerned directly with DCS's conduct towards Plaintiff H.H. (Doc. No. 12 at ¶¶ 1-6, 8)[13] are moot and will be dissolved on mootness grounds. On the other hand, those portions of the Temporary Restraining Order concerned with the custody of the four minor children, R.J., W.H., R.M., and B.M., (Doc. No. 12 at ¶ 7),[14] are not moot.

As noted above and for the reasons explained below, those provisions of the Temporary Restraining Order, (Doc. No. 12 at ¶¶ 1-6, 8), that restrict DCS's conduct towards Plaintiff H.H. are moot. As also noted above, Defendant Quin argues that the Court lacks (and lacked) subject-matter jurisdiction to enter the Temporary Restraining Order because this case has become moot. Defendant Quin argues that the case has become moot as a result of Plaintiff H.H. turning eighteen because "[a]ll claims and allegations raised by Plaintiffs against [Defendant] Quin relate to DCS's allegedly wrongful behavior toward [Plaintiff H.H.] due to his status as a custodial foster child and

---

[13] The first clause of paragraph 7 of the Temporary Restraining Order also concerns DCS's conduct towards Plaintiff H.H. and is also moot for the reasons described above. (Doc. No. 12 at ¶ 7) (enjoining Defendant Quin "from removing or threatening to remove H.H. from his current kinship placement with his sister Lacey.").

[14] For context, the Court states those portions of paragraph 7 of the Temporary Restraining Order that it finds not to be moot:

> Defendant [Quin] is hereby restrained from . . . removing or threating to remove [Plaintiff H.H.'s] minor siblings R.J. (16), W.H. (15), R.M. (13), and B.M. (12), from that same placement, where such removal is based on: (a) his refusal to sign immigration documents without legal counsel; (b) his exercise of his constitutional right to counsel; or (c) his pursuit of this legal action; Defendant shall not threaten such removal or separation as a means to coerce H.H.'s compliance with their demands regarding immigration paperwork.

(Doc. No. 12 at ¶ 7)

the alleged wrongful control DCS exerted over him regarding his immigration services." (Doc No. 18 at 7). Defendant Quin further argues that because Plaintiff H.H. turned eighteen on November 26, 2025, and has left "DCS's legal care, custody, or control," "the TRO should not have been issued because the case was moot at that time, and the restraining order should now be dissolved." (*Id.* at 7-8). Plaintiffs do not address this argument directly, instead choosing to focus their argument on the ongoing controversy regarding the custody of the four other minor children, R.J., W.H., R.M., and B.M., at the Hewitt-Perry home, arguing that "[t]he [Temporary Restraining Order's] primary protection—restraining DCS from removing [Plaintiff] H.H.'s other four minor siblings in retaliation for his exercise of constitutional rights—remains fully operative." (Doc. No. 20 at 9).

Here, the Court finds that it lacked (and continues to lack) subject-matter jurisdiction to enter the Temporary Restraining Order with respect to those portions of the Order enjoining Defendant Quin and her officers, agents, employees and the like from engaging in certain conduct with respect Plaintiff H.H. because the circumstances underlying the requested Temporary Restraining Order had become moot by the time it issued.[15] The Temporary Restraining Order issued on November 26, 2025, the day that Plaintiff turned eighteen. Now that Plaintiff H.H. is eighteen years old and is out of "DCS's legal care, custody, or control," (Doc. No. 18 at 7), the Court (in part because Plaintiffs do not argue otherwise), does not perceive any "meaningful relief," *Smith*, 129 F.3d at 363, that Plaintiffs would derive from the continuation of those portions of the Temporary Restraining Order enjoining DCS's conduct towards Plaintiff H.H. Indeed, based on the briefing on the Motion, it appears that DCS is not in a position to pressure Plaintiff H.H. (at

---

[15] The Court must accept responsibility for metaphorically taking its eye off the ball regarding the date of Plaintiff H.H.'s birthdate vis-à-vis the date of the issuance of the Temporary Restraining Order, which the Court had been working on for days in advance of Plaintiff H.H.'s actual birthday.

least to the extent that it previously could) with respect to his immigration status. Accordingly, those portions of the Temporary Restraining Order concerned directly with DCS's conduct towards Plaintiff H.H., (Doc. No. 12 at ¶¶ 1-6, 8), will be dissolved as moot.

However, the portions of the Temporary Restraining Order concerned with the custody of the four minor children, R.J., W.H., R.M., and B.M., (Doc. No. 12 at ¶ 7), are not moot. In her mootness argument, Defendant Quin does not address the ongoing controversy regarding the custody of the four minor children or whether DCS will remove those children from the Hewitt-Perry family due to either Plaintiff H.H.'s refusal to sign certain immigration papers or Plaintiff H.H.'s bringing of the instant lawsuit. Indeed, Defendant Quin's entire mootness argument rests solely on the fact that Plaintiff H.H. is no longer subject to DCS's custody. This may suffice to show that the Temporary Restraining Order is moot with respect to those portions restraining DCS's conduct towards Plaintiff H.H., but it does not suffice to show that the Temporary Restraining Order is moot with respect to its restrictions on the removal of the four minor children from the Hewitt-Perry family. And Plaintiffs' argument here demonstrates at this juncture that there is indeed an ongoing case or controversy to support maintaining the TRO because of the planned removal of the four minor siblings that Plaintiffs assert was scheduled for December 8, 2025. (Doc. No. 20 at 11).[16] Thus, at least at this juncture, the Temporary Restraining Order's

---

[16] The Court is aware that as of the time of entry of this memorandum opinion and the accompanying order, December 8, 2025, the date of the scheduled removal of the four minor children, has passed. Nevertheless, the Court is satisfied that at least for purposes of the mootness analysis herein, those portions of the TRO concerned with the custody of the four minor children may still make "'a difference to the legal interests of the parties,'" *McPherson*, 119 F.3d at 458 — namely the legal interests of the Count I Plaintiffs seeking to maintain their parental due process rights with respect to the four minor children — because of the ongoing risk of future removal of the four minor children by DCS (as evinced by the planned removal of the minor children on December 8, 2025. This is especially true because the Court has not been provided any additional information as to what actually did or did not occur on December 8, 2025, aside from statements in Plaintiffs' memorandum of law (Doc. No. 22-1) in support of Plaintiffs' "Motion to Convert Temporary Restraining Order Into Preliminary Injunction" (Doc. No. 22), that imply that no removal has yet taken

provisions concerned with the custody of the four minor children, R.J., W.H., R.M., and B.M., (Doc. No. 12 at ¶ 7), are not moot because that relief may still make "'a difference to the legal interests of the parties,'" *McPherson*, 119 F.3d at 458 — namely the legal interests of the Count I Plaintiffs seeking to maintain their parental due process rights with respect to the four minor children.

In sum, those portions of the Temporary Restraining Order concerned directly with DCS's conduct towards Plaintiff H.H., (Doc. No. 12 at ¶¶ 1-6, 8),[17] are moot and will be dissolved on those grounds, but the portions of the Temporary Restraining Order concerned with the custody of the four minor children, R.J., W.H., R.M., and B.M., (Doc. No. 12 at ¶ 7)[18] are not moot and will not be dissolved on grounds of mootness.

      *iii.*      *Are Plaintiffs' Federal Claims Moot?*[19]

---

place. (Doc. No. 22-1 at 10) ("The removal was scheduled for December 8, 2025, and absent continued relief from the Court, will likely occur this month.").

[17] As noted above, the first clause of paragraph 7 of the Temporary Restraining Order also concerns DCS's conduct towards Plaintiff H.H. and is moot in that respect. (Doc. No. 12 at ¶ 7) (enjoining Defendant Quin "from removing or threatening to remove H.H. from his current kinship placement with his sister Lacey.").

[18] For context, the Court reiterates those portions of paragraph 7 of the Temporary Restraining Order here that it finds not to be moot:

> Defendant [Quin] is hereby restrained from . . . removing or threating to remove [Plaintiff H.H.'s] minor siblings R.J. (16), W.H. (15), R.M. (13), and B.M. (12), from that same placement, where such removal is based on: (a) his refusal to sign immigration documents without legal counsel; (b) his exercise of his constitutional right to counsel; or (c) his pursuit of this legal action; Defendant shall not threaten such removal or separation as a means to coerce H.H.'s compliance with their demands regarding immigration paperwork.

(Doc. No. 12 at ¶ 7).

[19] The ultimate issue here is whether there is subject-matter jurisdiction, under Article III of the U.S. Constitution, over one or both of these claims. The Court is aware that generally this question is answered via a three-element test for Article III standing and that this test nowhere refers specifically to mootness as such. But a federal court may lack subject-matter jurisdiction over a case not only because there is no Article III standing under the three-part test, but alternatively because the case has become moot (given that, as noted above, mootness is a matter of subject-matter matter jurisdiction). However, "[s]tanding and

Next, the Court will determine whether Plaintiffs' federal claims,[20] Count I and Count II, are now moot because Plaintiff H.H. (since the filing of the Complaint) has turned eighteen years old. As a reminder, the only relief that Plaintiffs seek in connection with Count I and Count II is temporary injunctive and declaratory relief. Importantly, Plaintiffs characterize their sought-after declaratory judgment as being "purely prospective relief." (Doc. No. 20 at 13).[21] Here, Plaintiffs' claims are not moot as to Count I but are moot as to Count II.

As a reminder, via Count I, the Count I Plaintiffs bring a claim for violations of their parental due process rights with respect to "Plaintiff H.H., as well as [the] minor children R.J., W.H., R.M., and B.M." (Doc. No. 1 at ¶ 82). Although Plaintiff H.H. is no longer a minor—meaning that parental due process rights as to him are no longer applicable—parental due process rights with respect to the four minor children, R.J., W.H., R.M., and B.M., are still extant. As above, Plaintiffs' argument here demonstrates that there is standing to seek injunctive or declaratory relief because of the planned removal of the four minor children that Plaintiffs assert is scheduled for December 8, 2025, and being carried out "in retaliation for [Plaintiff] H.H.'s filing

---

mootness, albeit related, are distinct doctrines with separate tests to evaluate their existence at different times of the litigation." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021). The parties frame this discussion in terms of "mootness," and the Court thus analyzes the issue as such, while noting as an aside that the result here would be the same (and for substantively similar reasons) if the Court's analysis were described in terms of the three-element test for standing.

[20] The Court will accept Plaintiffs' characterization and herein will not resolve the conflict in views as to how to characterize declaratory relief. *Compare,* e.g., *Occupy Nashville v. Haslam*, 769 F.3d 434, 440 (6th Cir. 2014) (categorizing "a declaratory judgment" as "equitable relief") *with Sanders v. Louisville & N.R. Co.*, 144 F.2d 485, 486 (6th Cir. 1944) ("actions for declaratory judgment are sui generis[,] and the procedural remedy is neither legal nor equitable").

[21] The parties forwent briefing the issue of whether Count III or Count IV, which seek monetary relief, are moot. This turns out to have been prudent because the Court need not and does not address that issue here.

of this lawsuit." (Doc. No. 20 at 13).[22] And as above, Defendant Quin does not address anywhere in her mootness argument the ongoing controversy regarding the custody of the four minor children and whether DCS will remove those children from the Hewitt-Perry family because of Plaintiff H.H.'s bringing of this lawsuit. Thus, at this juncture, the Court finds that with respect to Count I, Plaintiffs' claims are not moot, because the relief sought with respect to Count I (whether the requested and obtained—but soon-to-expire—temporary injunctive relief or the declaration that Defendant Quin's conduct is unconstitutional) would still make "'a difference to the legal interests of the parties.'" *McPherson*, 119 F.3d at 458.

However, the Court finds that Count II is now moot. Via Count II, Plaintiffs bring a claim for a violation of Plaintiff H.H.'s due process right to fundamental fairness. Plaintiffs characterize this right as the right of "[m]inors in adjudicative proceedings [to be] afforded the 'due process standard' of 'fundamental fairness.'" (Doc. No. 1 at ¶ 13) (quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971)). At base, the relief Plaintiffs seek with respect to Count II is predicated on future or ongoing violations of a right which Plaintiff H.H. can no longer invoke: the right to fundamental fairness afforded to *minors* in an adjudicatory setting. Count II is moot because irrespective of whether the Court grants the requested injunctive or declaratory relief sought via

---

[22] As noted in a footnote above, the Court is aware that as of the entry of this memorandum opinion and the accompanying order, December 8, 2025, the date of the planned removal of the four minor children, has passed. Nevertheless, the Court is satisfied that at least for purposes of the mootness analysis herein, Count I is not moot as the relief sought with respect to Count I (whether the requested and obtained— but soon-to-expire—temporary injunctive relief or the declaration that Defendant Quin's conduct is unconstitutional) would still make "'a difference to the legal interests of the parties,'" *McPherson*, 119 F.3d at 458, due to the ongoing risk of future removal of the four minor children by DCS (as evinced by the planned removal of the minor children on December 8, 2025). This is especially true, as noted above, because the Court has not been provided any additional information as to what actually did or did not occur on December 8, 2025, aside from the implication in Plaintiffs' memorandum of law (Doc. No. 22-1) in support of Plaintiffs' "Motion to Convert Temporary Restraining Order Into Preliminary Injunction" (Doc. No. 22), that no removal has yet taken place. (Doc. No. 22-1 at 10) ("The removal was scheduled for December 8, 2025, and absent continued relief from the Court, will likely occur this month.").

Count II, it would not make "'a difference to the legal interests'" of Plaintiff H.H., *McPherson*, 119 F.3d at 458, because Plaintiff H.H. cannot plausibly allege any future violations of this right as to himself since he is no longer a minor. This is especially true as Plaintiffs concede that the requested relief with respect to Defendant Quin is "purely prospective." (Doc. No. 20 at 13). Because Count II is moot, the Court will *sua sponte* dismiss Count II without prejudice. *Micklin v. Goodell*, No. 1:07-CV-237, 2008 WL 58985, at *2 (W.D. Mich. Jan. 3, 2008) ("This court may also dismiss a complaint *sua sponte* for lack of subject-matter jurisdiction.").

Because the Court has found that at least a portion of the Temporary Restraining Order as well as Count I are not moot, the Court will also address (with respect to the non-moot portion) the *Younger* abstention argument that Defendant Quin raises in her Motion with respect to Count I. And the Court then will address Counts III and IV.

### 2. *Younger* Abstention

Defendant Quin argues that because the four minor children, R.J., W.H., R.M., and B.M., are subject to an ongoing juvenile dependency proceeding, *Younger* abstention applies, and "the [Temporary Restraining Order] should be dissolved and the Court should abstain from hearing this case." (Doc. No. 18 at 13-15; Doc. No. 18-1).[23] Below, the Court will briefly review the *Younger* abstention doctrine before then analyzing the doctrine's applicability to the present case and considering the parties' arguments on this issue.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court "held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (citing *Younger*, 401 U.S. at 43–44). The underlying concern of *Younger* is the "threat to our federal

---

[23] Proof of the ongoing state juvenile proceedings was attached to Defendant Quin's Motion at Docket No. 18-1.

system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423 (1979). Expressing this concern slightly differently, the Sixth Circuit has stated that "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017). Accordingly, when it does apply, "*Younger* abstention requires the federal court to defer to the state proceeding." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). While *Younger* was originally contemplated to apply to state-court criminal proceedings, the Supreme Court over the years has extended the doctrine to the quasi-criminal and even some strictly civil contexts. For example, in *Moore v. Sims*, the Court recognized that the principles of *Younger* apply not only in the criminal context, but also with equal force when there is a pending state court civil proceeding "in which important state interests are involved." *See Moore*, 442 U.S. at 423. The Court went on to explain that where the state is a party to a "temporary removal of a child in a child-abuse context," the requirement of an important state interest is met and that therefore *Younger* abstention may apply. *See id*. Indeed, the Sixth Circuit has also noted that *Younger* abstention is "is generally appropriate in matters of family relations such as child custody." *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001).

      *Younger* abstention is applicable where three requirements are satisfied: "(1) there must be [related] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (quoting *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)). Here, Defendant Quin argues that all three requirements are satisfied. (Doc. No. 18 at 13-15). By contrast, Plaintiffs dispute the

fulfilment of the last (but only the last) of the three requirements. (Doc. No. 20 at 20). Neither party contests that the state-court proceeding here implicates *Younger* abstention, or that the first two *Younger* requirements are met. Thus, the Court will examine only the last *Younger* requirement.

### i.    Adequate Opportunity in State Proceedings to Raise Constitutional Challenges

As noted above, the Court must determine whether Plaintiffs have an adequate opportunity in the state-court proceedings to raise their constitutional challenges. "Abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *See Squire v. Coughlan*, 469 F.3d 551, 557 (6th Cir. 2006). To that end, the Sixth Circuit has found that the "plaintiff bears the burden of showing that state law barred the presentation of his or her constitutional claims." *See id.*; *Furr-Barry v. Underwood*, 59 F. App'x 796, 797–798 (6th Cir. 2003) (affirming district court's application of *Younger*, in part because there was no evidence that the plaintiff could not raise constitutional claims in pending juvenile court proceedings).

Here, Plaintiffs argue merely that because Plaintiff "H.H. is now an adult, he is no longer a party to the juvenile proceedings" and that therefore "Plaintiffs are unable to obtain their requested relief in the state juvenile proceeding." (Doc. No. at 20 at 19-20). Yet this argument will not do here because it does not actually address whether Tennessee state law "clearly bars the interposition of the constitutional claims." *Squire*, 469 F.3d at 557. In other words, Plaintiffs have not met their burden to show that "state law barred the presentation of [their] constitutional claims." *See id.* Plaintiffs' argument here is also unavailing for two reasons. First, as noted above, Plaintiff H.H.'s constitutional claims in Count II, have already been dismissed from this action as moot, and so it makes little sense for the Court to decline abstention based on what *Plaintiff H.H.* is or is not able to do to assert constitutional claims in the state proceedings. Second, Plaintiffs'

argument does not actually address whether the Count I Plaintiffs—who (unlike Plaintiff H.H.) are parties to the (only) surviving constitutional claim after the mootness analysis above—would be prevented from bringing their parental due process claims in the ongoing juvenile proceeding.

Perhaps sensing this weakness in their arguments, Plaintiffs, relying on *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718 (6th Cir. 1993), argue that "bad faith and harassment by Defendant Quin and her employees and agents warrant an exception to abstention." (Doc. No. 20 at 20). But this reliance on *Berger* is inapt. In *Berger*, the Sixth Circuit considered whether there was any bad faith or harassment by the *tribunal* holding the proceedings at issue. *Berger*, 983 F.2d at 724. *Berger* does not suggest that it is enough for Plaintiffs to assert that because (supposedly) Defendant Quin acted in bad faith, *Younger* abstention is inapplicable. Instead, to properly invoke *Berger*, Plaintiffs must point to some sort of bad faith by the juvenile *court* at issue in this case.[24] This, Plaintiffs have not done, and accordingly their argument on this point is unavailing.

Accordingly, the Court finds that *Younger* abstention applies, and the remainder of the Temporary Restraining Order will be dissolved because the Court is abstaining from the adjudication of (*inter alia*) the claim whereunder such part of the Temporary Restraining Order was granted. However, this is not the end of the analysis, because the Court must next determine, under the *Younger* abstention doctrine, whether to dismiss Count I or instead to hold Count I in abeyance via a stay.

"[W]hen application of *Younger* abstention is proper and the plaintiff is seeking money damages and equitable relief[,] the appropriate procedure [generally] is to stay the proceedings

---

[24] The Court is aware of the long-standing (if rarely applied) exception to *Younger* abstention where there is a "bad-faith prosecution of an individual." *Tindall v. Wayne Cnty. Friend of Ct., by: £Schewe*, 269 F.3d 533, 539 (6th Cir. 2001). However, Plaintiffs here rely on *Berger*, which (as discussed above) involved allegations of bad-faith by the tribunal holding the proceedings at issue in that case; thus, Plaintiffs have not even presented (much less substantiated) an argument to support the Court finding an exception to *Younger* abstention based on this bad-faith *prosecution* exception.

rather than dismiss the case without prejudice." *Cummings v. Husted*, 795 F. Supp. 2d 677, 694 (S.D. Ohio 2011) (citing *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995)); *see also Carroll v. City of Mount Clemens*, 139 F.3d 1072 (6th Cir. 1998). However, where a particular claim seeks injunctive or declaratory relief (without also seeking monetary relief), dismissal of that claim without prejudice is proper under *Younger. Quatkemeyer v. Kentucky Bd. of Med. Licensure*, No. CIVA 3:09-CV-746-H, 2010 WL 774195, at *3 (W.D. Ky. Feb. 26, 2010) (citing *Meyers v. Franklin County Court of Common Pleas*, 23 F. App'x 201, 206 (6th Cir. 2001) (noting that "dismissal without prejudice of all claims for injunctive and declaratory relief is appropriate" but that "with respect to the damages claims . . . the appropriate action based on *Younger* abstention is a stay."); *see Davis v. Whitmer*, No. 1:19-CV-10569, 2019 WL 1326671, at *4 (E.D. Mich. Mar. 25, 2019) (abstaining from considering the plaintiff's *ex post facto* challenge to Michigan's sex offender registry act and dismissing the case, rather than staying the action, where the plaintiff did not seek money damages); *Johnson v. Ohio Bureau of Workers' Comp.*, No. 1:13-CV-1199, 2014 WL 296875, at *7 (N.D. Ohio Jan. 27, 2014) (abstaining pursuant to *Younger* and dismissing the case, rather than holding the action in abeyance, where the plaintiff did not seek money damages).

Thus, Count I will be dismissed without prejudice and *sua sponte*, *Squire*, 469 F.3d at 556–57 (affirming district court's *sua sponte* dismissal of complaint based on *Younger* abstention), because the only relief (aside from attorneys' fees, costs, and post and pre-judgment interest) Plaintiffs seek in connection with Count I of the Complaint is temporary injunctive relief and declaratory relief.

Because the Court concludes that *Younger* abstention here mandates dismissal, the Court declines to address Defendant Quin's argument that the Court lacks jurisdiction either under the

domestic-relations exception to subject-matter jurisdiction or because Defendant Quin is entitled to 11th Amendment sovereign immunity.

3.  State Law Claims

With the federal claims in Count I and Count II dismissed *sua sponte*, only the state law claims (Count III and Count IV) remain. The Court initially had (or at least appeared to have) jurisdiction over these state law claims via supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

A district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); *see also Kinman v. Burnop*, No. 3:18-CV-00809, 2020 WL 707583, at *6 (M.D. Tenn. Feb. 12, 2020).

When no claims over which the court has original jurisdiction remain, courts usually decline to exercise supplemental jurisdiction over the remaining state-law claims. *See Stevens v. Gooch*, 48 F. Supp. 3d 992, 1007 (E.D. Ky. 2014) (in usual case in which all federal law claims have been eliminated before trial, balance of factors point toward declining to exercise jurisdiction over remaining state-law claims); *Carpenter v. Lane College*, Case No. 2:17-CV-2672, 2019 WL 845275, at *4 (W.D. Tenn. Feb. 6, 2019) (having granted summary judgment on plaintiff's sole federal claim, court followed the "usual Sixth Circuit practice" and declined to exercise supplemental jurisdiction over the plaintiff's remaining state law claims).

The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims." *Wilkins v. Tennessee Dep't of Children's Servs.*, No. 3:18-CV-00102, 2018 WL 6413666, at *5 (M.D. Tenn. Dec. 6, 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon*, 484 U.S. at 350).

The basis for original jurisdiction in this case is (solely) federal-question jurisdiction, and the Court is dismissing all of Plaintiffs' federal claims upon which supplemental jurisdiction over Plaintiffs' state-law claims was based. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and they will be dismissed *sua sponte* without prejudice.

CONCLUSION

Accordingly, for the reasons stated herein, Defendant Quin's Motion (Doc. No. 18) will be **GRANTED,** so that the Temporary Restraining Order (which is short-lived anyway) will be dissolved.[25] Moreover, all of Plaintiffs' claims in this action will be dismissed based either on mootness, *Younger* abstention, or the declination of supplemental jurisdiction, and this action accordingly will be **DISMISSED** in its entirety without prejudice**.** Additionally, because the Temporary Restraining Order will be dissolved and this action will be dismissed in its entirety, Plaintiffs' pending "Motion to Convert Temporary Restraining Order Into Preliminary Injunction" (Doc. No. 22) will also be **DENIED** as moot.

---

[25] The Court notes that the Temporary Restraining Order (Doc. No. 12) went into effect at 2:00pm on November 26, 2025, such that the Temporary Restraining Order would terminate, irrespective of this memorandum opinion and the accompanying order, at 2:00pm on December 10, 2025. Therefore, at the time of entry of this memorandum opinion and the accompanying order, the Temporary Restraining Order is still in effect and will, accordingly, be dissolved, albeit just hours before the time of termination that otherwise would apply.

An appropriate accompanying order will be entered.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE